UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -:
ERIC HOFFMAN, WILLIE HORNE,                :    16 Civ. 0155 (LAK) (JCF)
GREGORY McCLAIN, and CLIFFORD ROSS :
on behalf of themselves and all            :
others similarly situated,                 :
                                           :
               Plaintiffs,                 :
                                           :
    - against -                            :
                                           :
CHERYL IGHODARO, ANGELA HALL, and  :
PRECISE MANAGEMENT, INC.,                  :
                                           :
               Defendants.                 :
- - - - - - - - - - - - - - - - - - -:
TASHEEN McLEAN, DAMIEN LYNCH, and  :    16 Civ. 4380 (LAK) (JCF)
JOHN GODOY, on behalf of                   :
themselves and all others                  :
similarly situated,                        :
                                           :    REPORT AND
               Plaintiffs,                 :    RECOMMENDATION
                                           :
    - against -                            :
                                           :
CHERYL IGHODARO, ANGELA HALL,      :
PRECISE MANAGEMENT, INC., PRECISE  :
REAL ESTATE MANAGEMENT INC., JOHN  :
and JANE DOES 1-10, and PRECISE    :
BUILDING SERVICES INC.,                    :
                                           :
               Defendants.                 :
- - - - - - - - - - - - - - - - - - -:



USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/28/16

TO THE HONORABLE LEWIS A. KAPLAN, U.S.D.J.:

These two related cases have been consolidated by a separate

Memorandum and Order, filed today.  In the first, the plaintiffs,

Eric Hoffman, Willie Horne, Gregory McClain, and Clifford Ross,

bring an action against Cheryl Ighodaro, Angela Hall, and Precise

Management, Inc.  In the second, Tasheen McLean, Damien Lynch, and

1

John Godoy bring an action against Cheryl Ighodaro, Angela Hall, Precise Management, Inc., Precise Building Services, Inc., and Precise Real Estate Management, Inc. (the corporate entities are hereafter referred to collectively as "Precise"). The plaintiffs in both cases allege claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and the Wage Theft Prevention Act, N.Y. Labor Law ("NYLL") § 195, for failure to pay accrued overtime and failure to pay all wages due in a timely manner. The plaintiffs seek compensatory damages.

The defendants have moved to dismiss the plaintiffs' complaints in both cases pursuant to Rule 12(b)(2), Rule 12(b)(5), and Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] The plaintiffs oppose the motions. For the reasons that follow, I recommend that the defendants' motions be denied.

<u>Background</u>

In accordance with the standard for assessing a motion to dismiss, see <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (per curiam), the following facts are derived from the plaintiffs' complaints and taken as true.

The defendants operate Precise, an enterprise that provides property management services to more than 100 residential buildings in New York City and has revenue of over $500,000 per

---

[1] The complaints and motions to dismiss in both cases are substantially the same.

2

year.  (Complaint, Hoffman v. Ighodaro, No. 16 Civ. 155 (S.D.N.Y. Jan. 8, 2016) ("Hoffman Compl."), ¶¶ 16, 123; Amended Complaint, McLean v. Ighodaro, No. 16 Civ. 4380 (S.D.N.Y. June 15, 2016) ("McLean Compl."), ¶¶ 19, 114).  Defendant Cheryl Ighodaro is the President, Chief Executive Officer, and Manager of Housing, and she "oversee[s] every aspect of [Precise]"; furthermore, she regulates the employment of persons employed by Precise and acts in the interest of Precise in relation to its employees. (Hoffman Compl., ¶¶ 7-8; McLean Compl., ¶¶ 11-12).  Defendant Angela Hall supervised plaintiffs and other maintenance workers, and she is in active control of the management of Precise.  (Hoffman Compl., ¶¶ 10-11; McLean Compl., ¶¶ 14-15).

The defendants employed the plaintiffs as superintendents and porters.  (Hoffman Compl., ¶¶ 17, 22, 27; McLean Compl., ¶¶ 20, 25, 30).  Each employee was assigned to work at more than one building to perform duties including landscaping, janitorial services, cleaning, repairs, and trash removal.  (Hoffman Compl., ¶¶ 17, 24; McLean Compl., ¶¶ 20, 27).  The defendants, rather than the owners of the properties, had the power to hire, fire, and directly supervise the plaintiffs.  (Hoffman Compl., ¶¶ 18-19; McLean Compl., ¶¶ 21-22).  The defendants also maintained the time records, managed the payroll, and determined the pay rates of the plaintiffs.  (Hoffman Compl., ¶¶ 20-21; McLean Compl., ¶¶ 23-24).

The defendants regularly permitted the plaintiffs to work

over forty hours per week. (<u>Hoffman</u> Compl., ¶ 27; <u>McLean</u> Compl., ¶ 30). They consistently underreported the number of hours the plaintiffs worked and systematically deprived them of earned overtime pay. (<u>Hoffman</u> Compl., ¶ 26; <u>McLean</u> Compl., ¶ 29). Indeed, the plaintiffs were required to call in the amount of overtime hours worked but were paid for approximately one-third of the actual time worked. (<u>Hoffman</u> Compl., ¶¶ 32-33; <u>McLean</u> Compl., ¶¶ 35-36). The defendants provided some plaintiffs with apartments as compensation, but failed to include the value of the apartments in calculating overtime, which resulted in improperly calculated overtime rates. (<u>Hoffman</u> Compl., ¶¶ 44-46; <u>McLean</u> Compl., ¶¶ 47-49). Furthermore, the plaintiffs were often required to work after hours and on weekends without additional compensation. (<u>Hoffman</u> Compl., ¶¶ 30-31; <u>McLean</u> Compl., ¶¶ 33-34). The defendants were aware of the duty to report hours and willfully underreported them. (<u>Hoffman</u> Compl., ¶¶ 43, 47; <u>McLean</u> Compl., ¶¶ 46, 50).

The plaintiffs were also called upon to perform "side jobs" that were not connected with standard repairs. (<u>Hoffman</u> Compl., ¶ 35; <u>McLean</u> Compl., ¶ 38). Although these side jobs paid more than standard work, the defendants willfully did not account for side job hours when calculating overall overtime rates of the maintenance workers. (<u>Hoffman</u> Compl., ¶¶ 37-38, 47; <u>McLean</u> Compl., ¶¶ 39-46). Furthermore, the defendants were frequently delinquent in paying the plaintiffs for side jobs and sometimes did not pay

4

the plaintiffs at all. (Hoffman Compl., ¶¶ 42-43; McLean Compl., ¶¶ 45-46). In addition, the defendants did not issue the plaintiffs accurate payroll statements or notifications required under the Wage Theft Prevention Act. (Hoffman Compl., ¶¶ 48-49; McLean Compl., ¶¶ 51-52).

The plaintiffs attempted service on the defendants numerous times, and the defendants contest the validity of service on Ms. Hall and Ms. Ighodaro in connection with the Hoffman action, as well as on Precise in connection with the McLean action. (Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss in Hoffman ("Hoffman Def. Memo.") at 11-12; Defendants' Amended and Restated Memorandum of Law in Support of Defendants' Motion to Dismiss in McLean ("McLean Def. Memo.") at 18-19).[2]

In connection with the Hoffman action, the process server attempted personal service on Ms. Ighodaro three times at her residence, and then nailed and mailed the summons and complaint on February 6, 2016. (Affidavit of Service in Hoffman dated Feb. 9, 2016). However, Ms. Ighodaro asserts that she received a summons that was actually addressed to Ms. Hall. (Declaration of Cheryl Ighodaro in Hoffman dated May 12, 2016 ("Ighodaro 5/12/16 Decl."), ¶ 3; Summons in a Civil Action ("Hall-Ighodaro Summons"), attached

---

[2]     The defendants repeatedly attempted to file their motion to dismiss in McLean, but the filings were rejected as deficient. The defendants succeeded in filing the motion and supporting papers on July 26, although the memorandum was not filed until August 5.

as exhibit to Declaration of Cheryl Ighodaro dated July 15, 2016).
Thereafter, service was again attempted on Ms. Ighodaro on April
7, 2016, at her place of employment; however, an initial affidavit
of service states that the process server had "served a
corporation," and, furthermore, the affidavit does not state that
Ms. Ighodaro was ever mailed a copy of the summons and complaint.
(Affidavit of Service in Hoffman dated April 13, 2016).  A second
affidavit of service, dated May 11, 2016, correctly states that
Ms. Ighodaro is a natural person, but fails to mention whether
service was also mailed.  (Affidavit of Service in Hoffman dated
May 11, 2016 ("May 11 Ighodaro Aff.")).  The mailing was not
completed until May 26, 2016, more than a month after the summons
and complaint had been delivered to Ms. Ighodaro's place of
employment.  (Affidavit of Service in Hoffman dated June 13, 2016
("June 13 Ighodaro Aff.")).  It was not then filed with the Court
until June 13, 2016.

The first service attempt on Angela Hall failed because of an
error in the address.  (Plaintiffs' Memorandum in Opposition to
Motion to Dismiss and Cross Motion for Consolidation in Hoffman
("Hoffman Pl. Memo.") at 6; Affidavit of Service in Hoffman dated
Feb. 11, 2016 ("Feb. 11 Hall Aff.")).  A second service attempt
was made at Ms. Hall's place of employment on April 7, 2016;
however, a first affidavit of service states that the process
server had "served a corporation," and, furthermore, the affidavit

6

does not state whether Ms. Hall was ever mailed another copy of the summons and complaint. (Affidavit of Service in Hoffman dated April 13, 2016). A second affidavit of service, dated May 11, 2016, correctly states that Ms. Hall is a natural person, but again fails to mention whether service was also mailed. (Affidavit of Service in Hoffman dated May 11, 2016 ("May 11 Hall Aff.")). The mailing was not completed until May 26, 2016, more than a month after the summons and complaint had been delivered to Ms. Hall's place of employment. (Affidavit of Service in Hoffman dated June 13, 2016 ("June 13 Hall Aff.")). It was not filed with the Court until June 13, 2016.

In McLean, the process server delivered the summons and complaint on June 17, 2016, to Mirina Linares, a receptionist for Precise. (Affidavit of Service in McLean dated June 17, 2016). The plaintiffs attempted service again, and this time served the three Precise entities through the New York Secretary of State. (Affidavit of Service – Secretary of State on Precise Management, Inc., in McLean dated July 19, 2016 ("July 19 Precise Management, Inc., Aff."); Affidavit of Service – Secretary of State on Precise Real Estate Management, Inc., in McLean dated July 27, 2016 ("July 27 Precise Real Estate Aff."); Affidavit of Service – Secretary of State on Precise Building Services, Inc., in McLean dated July 27, 2016 ("July 27 Precise Building Services Aff.")).

Discussion

The defendants advance several theories in support of their motions to dismiss.  First, they argue that service of process in Hoffman was insufficient as to Ms. Ighodaro and Ms. Hall.  (Hoffman Def. Memo. at 9-11).  Second, they contend that service of process in McLean was insufficient as to Precise.  (McLean Def. Memo. at 18-19).  Third, they argue that none of the defendants was the employer of the plaintiffs, and thus none can be liable under the FLSA and NYLL.  (Hoffman Def. Memo. at 13-21; McLean Def. Memo. at 8-18).  Fourth, Ms. Hall maintains that since she individually earns less than $500,000, the FLSA is not applicable to her.  (Hoffman Def. Memo. at 19; McLean Def. Memo. at 16).  Fifth, the defendants argue that the statute of limitations precludes some claims.  (Hoffman Def. Memo. at 22; McLean Def. Memo. at 20-21).  Sixth, the defendants assert that plaintiff Willie Horne signed a waiver and release.  (Hoffman Def. Memo. at 21).  Finally, the defendants contend that the McLean plaintiffs worked for a different employer, Ihsan, L.P., and that it properly compensated them.  (McLean Def. Memo. at 19-20).

A.   Service of Process

Due process of law requires notice to "apprise interested parties of the pendency of an action and [to] afford them an opportunity to present their objections."  Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).  When a defendant moves to dismiss under Rule 12(b)(5) for improper

service, the Court looks to Rule 4 to decide the issue.  DeLuca v. AccessIT Group, Inc., 695 F. Supp.2d 54, 64 (S.D.N.Y. 2010). "'[T]he burden of proof is on the plaintiff to show the adequacy of service.'"  Id. (quoting Howard v. Klynveld Peat Marwick Goerdeler, 977 F. Supp. 654, 658 (S.D.N.Y. 1997), aff'd, 173 F.3d 844 (2d Cir. 1999)).  Compliance with the service requirements prescribed in the Federal Rules is mandatory before a defendant is subject to the court's jurisdiction.  See Buggs v. Ehrnschwender, 968 F.2d 1544, 1548 (2d Cir. 1992) (citing Markoff v. South Nassau Community Hospital, 61 N.Y.2d 283, 288, 473 N.Y.S.2d 766, 768 (1984) ("Actual notice alone will not sustain the service or subject a person to the court's jurisdiction when there has not been compliance with prescribed conditions of service.")).

### 1.   Service on Ms. Ighodaro in Hoffman

For a summons to be effective, it must "be directed to the defendant," Fed. R. Civ. P. 4(a)(1)(B), and it must "state the name and address of the plaintiff's attorney or -- if unrepresented -- of the plaintiff," Fed. R. Civ. P. 4(a)(1)(C).  However, clerical errors or technical errors in a summons should be forgiven.  See Doe v. Constant, 354 F. App'x 543, 546 (2d Cir. 2009) ("Rule 4(a)(1)(B) of the Federal Rules of Civil Procedure provides only that a summons 'be directed to the defendant,' and this rule is 'to be liberally construed, to further the purpose of finding personal jurisdiction in cases in which the party has

received actual notice.' Thus, because [the defendant] received actual notice, and because any defects in the summons were purely clerical, service of process was sufficient to vest the district court with personal jurisdiction." (internal citations omitted) (quoting Grace v. Bank Leumi Trust Co. of New York, 443 F.3d 180, 190 n.8 (2d Cir. 2006))); DeLuca, 695 F. Supp. 2d at 65.  Other courts have held that a minor error in the summons (such as an incorrect name or address) will not invalidate service where the defendant's name was in the caption, the defendant actually received the summons and complaint, and a reasonable and intelligent person would objectively realize that he or she was being named in an action.  See Stevens v. Smith, No. 04 C 985, 2005 WL 2365294, at *4 (W.D. Wis. Sept. 26, 2005); Veremis v. Interstate Steel Co., 163 F.R.D. 543, 545 (N.D. Ill. 1995); see also Warfield v. Byron, 137 F. App'x 651, 655 (5th Cir. 2005) ("[D]efects are not fatal if they do not prejudice the defendant." (footnote omitted)).  Instead of deciding whether or not a mistake in the summons is de minimis, the court may grant an extension to effect service consistent with the rules.  DeLuca, 695 F. Supp. 2d at 67.

The first summons Ms. Ighodaro received at her residence was addressed to Ms. Hall (Hoffman Def. Memo. at 11), and therefore was technically improper under the Rules.  Service was later reattempted on Ms. Ighodaro at her place of employment on April 7,

2016 (May 11 Ighodaro Aff.), but a copy of the summons and complaint was not mailed to Ms. Ighodaro until May 26, 2016 (June 13 Ighodaro Aff.). Rule 4(e) provides that service may be effected by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

> (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). New York law provides that service may be made upon an individual by

> delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such delivery and mailing to be effected within twenty days of each other; proof of such service shall be filed with the clerk of the court designated in the summons within twenty days of either such delivery or mailing, whichever is effected later; service shall be complete ten days after such filing; proof of service shall identify such person of suitable age and discretion and state the date, time and place of service . . . .

11

N.Y. Civ. Prac. Law & Rules ("CPLR") § 308(2).

It is well established that the New York statutory regime for service must be followed strictly. Dorfman v. Leidner, 76 N.Y.2d 956, 958, 563 N.Y.S.2d 723, 725 (1990) ("Service of process is carefully prescribed by the Legislature, which affords litigants ample methods for serving natural persons. Regularity of process, certainty and reliability for all litigants and for the courts are highly desirable objectives to avoid generating collateral disputes. These objectives are served by adherence to the statute and disserved by judicially engrafted exceptions to [the] CPLR . . . ." (internal citations omitted)); Macchia v. Russo, 67 N.Y.2d 592, 595, 505 N.Y.S.2d 591, 592 (1986) ("Notice received by means other than those authorized by [CPLR § 308] does not bring a defendant within the jurisdiction of the court."); see also Colvin v. State University College at Farmingdale, No. 13 Civ. 3595, 2014 WL 2863224, at *14 (E.D.N.Y. June 19, 2014); Stop & Shop Supermarket Co. v. Goldsmith, No. 10 Civ. 3052, 2011 WL 1236121, at *4 (S.D.N.Y. March 31, 2011). Furthermore, the obligation to effect delivery and mailing are jurisdictional requirements, and failure to perform them both properly can result in dismissal. Stop & Shop, 2011 WL 1236121, at *4. Consequently, failure to effectuate both steps within the twenty-day requirement constitutes improper service. New York State Higher Education Services Corp. v. Palmeri, 167 A.D.2d 797, 798, 563 N.Y.S.2d 358,

359 (3d Dep't 1990) ("Plaintiff's argument that personal service was made upon defendant under CPLR 308(2) in that the summons and complaint were left at his residence as alleged by the process server on February 13, 1989 and that thereafter on March 11, 1989 a copy of the summons and complaint were mailed to him at his residence, which he admittedly received, fails because the mailing was made 26 days after the service at his residence rather than the required 20 days . . . . [S]tatutory requirements relating to personal service are to be strictly followed."). Because Ms. Ighodaro was not mailed the summons delivered on April 7, 2016, until May 26, 2016 -- over twenty days later -- service on April 7, 2016, was ineffective, and Ms. Ighodaro has never been properly served in <u>Hoffman</u>.

### 2.   Service on Ms. Hall in Hoffman

The first attempt at service on Ms. Hall was unsuccessful because service was attempted at an address where Ms. Hall does not work or reside (Feb. 11 Hall Aff.), and the plaintiffs have admitted that the service was defective (<u>Hoffman</u> Pl. Memo. at 6 ("The first service attempted on February 9, 2016 was defective because of typographical error in the address.")).

The second attempt at service on Ms. Hall falls short for the same reason as the second attempt at service on Ms. Ighodaro. Although the second affidavit at service correctly refers to Ms. Hall as a natural person (<u>Hoffman</u> Def. Memo. at 11), and was served

13

at her place of employment on April 7, 2016 (May 11 Hall Aff.), a copy of the summons and complaint was not mailed until May 26, 2016 (June 13 Hall Aff.).   Since the summons and complaint were not mailed until more than a month after delivery of the summons, service was improper.

> 3.   Extension of Time to Serve

According to Federal Rule of Civil Procedure 4(m), an action must be dismissed against a defendant if the plaintiff fails to serve the defendant within 90 days of filing the complaint; however, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m).   Additionally, the Court may extend time even in the absence of good cause.   Henderson v. United States, 517 U.S. 654, 658 n.5 (1996); Zapata v. The City of New York, 502 F.3d 192, 196 (2d Cir. 2007); DeLuca, 695 F. Supp. 2d at 66.   For the reasons stated below, I recommend that the Court use its discretion to extend the time to effect service.

> a.   Good Cause Extension

The first and primary factor in a good cause analysis is the actual reason that a plaintiff proffers for the failure.   Cassano v. Altshuler, No. 15 Civ. 1186, 2016 WL 2918432, at *3 (S.D.N.Y. May 16, 2016).   Inadvertence, mistake, neglect or misplaced reliance does not give rise to a good cause exception.   Id. at *3- 4.   Rather, in order for an extension to be mandatory, "[a]

plaintiff must demonstrate that despite diligent attempts, service could not be made due to exceptional circumstances beyond his or her control." Id. at *3 (quoting Spinale v. United States, No. 03 Civ. 1704, 2005 WL 659150, at *3 (S.D.N.Y. Mar. 16, 2005)).

The plaintiffs' excuses for service errors all consist of alleged mistakes. There was a mistake in Ms. Hall's address. (Hoffman Pl. Memo. at 6). Although the plaintiffs assert that the first attempt of service on Ms. Ighodaro was proper (Hoffman Pl. Memo. at 5), the affidavit from Ms. Ighodaro indicates she received a summons addressed to Ms. Hall (Ighodaro 5/12/16 Decl., ¶ 3; Hall-Ighodaro Summons). When the plaintiffs attempted to serve Ms. Hall and Ms. Ighodaro at their place of employment, service was not mailed because of an "error" in the affidavit. (Hoffman Pl. Memo. at 6). Even after the plaintiffs learned of their error, they did not attempt to deliver the summons within the required twenty days. They have not attempted to re-serve Ms. Hall and Ms. Ighodaro properly in connection with the Hoffman action. Thus, this factor weighs against the plaintiffs.

Courts assessing good cause also "consider (i) whether the plaintiff has moved under Rule 6(b) for an enlargement of time and (ii) the prejudice to the defendants that would result from an extension." Cassano, 2016 WL 2918432, at *4. Here, the plaintiffs did not request an extension of time until the defendants raised the issue in their motion to dismiss. (Hoffman Pl. Memo. at 7).

As for prejudice, courts "acknowledge[] the possibility of prejudice insofar as 'extending the service period beyond the statute of limitations period for the action imposes a corresponding prejudice on the defendants.'" Cassano, 2016 WL 2918432, at *4 (footnote omitted) (quoting Vaher v. Town of Orangetown, New York, 916 F. Supp. 2d 404, 421 (S.D.N.Y. 2013)). Thus, the plaintiffs have not shown good cause for their failure to properly serve the defendants.

### b.  Discretionary Extension

To receive a discretionary extension without a showing of good cause, "the plaintiff must ordinarily advance some colorable excuse for neglect," and the court must consider the prejudice to each party. Zapata, 502 F.3d at 198.  Courts have advanced a host of other issues to consider, including efforts made by the plaintiff to effect service, whether the plaintiff requested an extension of time, and whether the defendant was actually put on notice. Id.; see also DeLuca, 695 F. Supp. 2d at 66 (listing statute of limitations, defendant's notice, whether defendant attempted to conceal defect in service, and defendant's prejudice as factors); Cassano, 2016 WL 2918432, at *4 (listing statute of limitations, excuses by plaintiff, length of delay, and prejudice as factors).

Importantly, district courts must examine whether a "dismissal without prejudice in combination with the statute of

16

limitations would result in a dismissal <u>with</u> prejudice" to the plaintiff, <u>Zapata</u>, 502 F.3d at 197, "often consider[ing] the fact that the statute of limitations has run on a claim as favoring the plaintiff," <u>Vaher</u>, 916 F. Supp. at 420.   However, district courts must also "decide on the facts of each case how to weigh the prejudice to the defendant that arises from the necessity of defending an action after both the original service period and the statute of limitations have passed before service." <u>Zapata</u>, 502 F.3d at 198.

As discussed above, the plaintiffs' reasons for improper service are mistake and neglect.   However, their mistakes seem inadvertent, such as the "typographical error" in Ms. Hall's address as well as data entry errors in the affidavits of service, and there is no question that they tried many times to serve the defendants.   (<u>Hoffman</u> Pl. Memo. at 5-6).   Furthermore, the defendants appear to have been on notice of the suit (Ighodaro 5/12/16 Decl., ¶ 3; Ighodaro-Hall Summons; Declaration of Angela Hall in <u>Hoffman</u> dated May 20, 2016 ("Hall 5/20/16 Decl."), ¶ 3; Declaration of Anthony Portesy in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss in <u>Hoffman</u>, ¶ 3). Precise has been properly served, and Ms. Ighodaro is the CEO and Ms. Hall is a key employee.   (<u>Hoffman</u> Def. Memo. at 7-8).

In addition, the statute of limitations could prejudice the plaintiffs if they must refile, since, at maximum, it is three

years under the FLSA, 29 U.S.C. § 255(a), and plaintiff Willie Horne allegedly ceased working for the defendants in March 2013. (Hoffman Compl., ¶ 13).  Other plaintiffs stopped working for the defendants more than two years ago, and their claims may be precluded if the two-year statute of limitations were to apply to this action.  The defendants do not make any specific claims of prejudice in their motion to dismiss.  (Hoffman Def. Memo. at 10-12).  Although a defendant may be prejudiced by being forced to defend an action after the statute of limitations has passed, the defendants appear to have been put on notice of the suit within the 120-day period.  (Ighodaro 5/12/16 Decl., ¶ 3; Hall 5/20/16 Decl., ¶ 3).  Therefore, I recommend that the plaintiffs be granted an extension of thirty days from final determination of these motions to effect service.

     5.   Service on Precise in McLean

A corporation may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1)(A). Thus, a corporation can be served by "following state law for serving a summons." Fed. R. Civ. P. 4(e)(1).  In New York, service can be effected on a corporation by serving either a registered agent or the secretary of state:

> Service of process on the secretary of state as agent of a domestic or authorized foreign corporation shall be made by personally delivering to and leaving with the secretary of state or a deputy, or with any person authorized by the secretary of state to receive such

18

> service, at the office of the department of state in the
> city of Albany, duplicate copies of such process
> together with the statutory fee, which fee shall be a
> taxable disbursement. Service of process on such
> corporation shall be complete when the secretary of
> state is so served.

N.Y. Bus. Corp. Law § 306(b)(1).   The plaintiffs served the
secretary of state as to all three Precise entities by personally
leaving copies of the summons and complaint with the appropriate
designee between July 19, 2016 and July 20, 2016. (July 19 Precise
Management, Inc., Aff.; July 27 Precise Real Estate Aff.; July 27
Precise Building Service Aff.).   Therefore, the three Precise
entities were properly served.[3]

   B.   12(b)(6) Motion to Dismiss

   To survive a motion to dismiss under Rule 12(b)(6), "a
complaint must contain sufficient factual matter . . . to 'state
a claim to relief that is plausible on its face.'"   Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.
Twombly, 550 U.S. 544, 570 (2007)).   While a complaint need not
make "detailed factual allegations," it must contain more than
mere "labels and conclusions" or "formulaic recitation[s] of the
elements of a cause of action."   Id. (quoting Twombly, 550 U.S. at
555).   The Court's charge in ruling on a 12(b)(6) motion to dismiss
"is merely to assess the legal feasibility of the complaint, not

---

   [3]   Since service of the Precise entities was proper through
the secretary of state, I need not address whether service of
Precise through its receptionist was proper.

to assay the weight of the evidence which might be offered in support thereof." GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd., 580 F. Supp. 2d 321, 327 (S.D.N.Y. 2008) (quoting Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004)). The Court must construe the complaint in the light most favorable to the plaintiffs, "taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).

### 1. Employer-Employee Relationship

The defendants contend, in part, that the complaints must be dismissed because they are not the plaintiffs' employers; rather the owners of the respective buildings are. The FLSA states, in pertinent part, that "no employer shall employ any of his employees . . . for a workweek longer than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The statutory definition of "employer" is broad, Barfield v. New York City Health & Hospitals Corp., 537 F.3d 132, 140 (2d 2008), and "includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency," 29 U.S.C. § 203(d). An "employee" is "any

individual employed by an employer," 29 U.S.C. § 203(e)(1), and to "employ" means "to suffer or permit to work," 29 U.S.C. § 203(g).

There is no precise test to determine whether an entity or individual is another's employer; rather, the courts in this circuit have "treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." Barfield, 537 F.3d at 141-42. "In assessing the 'economic reality' of a particular employment situation, [the Second Circuit] ha[s] identified different sets of relevant factors based on the factual challenges posed by particular cases." Id. at 142.

However, the Circuit has pointed to factors that, if shown to apply, can be a sufficient basis for a finding of an employer-employee relationship (although these factors are not necessary to show an employment relationship). Id. at 142-43. For example, under Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984), the court must ask "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."   The Second Circuit has applied a number of different tests to other circumstances, stating that any number of different factors can be determinative. See Zheng v. Liberty Apparel Co., 355 F.3d 61, 72 (2d Cir. 2003); Brock v. Superior

Care, Inc., 840 F.2d 1054, 1058-59 (2d Cir. 1988); see also
Barfield, 537 F.3d at 141-44 (collecting cases).  This analysis
applies whether the alleged employer is an individual or an entity;
furthermore, a person working for an employer-entity can also be
held liable, if the individual meets similar criteria.  Herman v.
RSR Security Services Ltd., 172 F.3d 132, 139 (2d Cir. 2003).

     The same test is used to determine whether an entity is an
"employer" under the NYLL:

> Neither the New York Court of Appeals nor the Second
> Circuit has decided "whether the tests for 'employer'
> status are the same under the FLSA and the NYLL."
> However, "district courts in this Circuit have
> consistently interpreted the definition of 'employer'
> under the New York Labor Law coextensively with the
> definition used by the FLSA." The parties do not argue
> otherwise.

Inclan v. New York Hospitality Group, Inc., 95 F. Supp. 3d 490,
511 (S.D.N.Y. 2015) (internal citations omitted) (quoting Irizarry
v. Catsimatidis, 722 F.3d 99, 117 (2d Cir. 2013), and Ho v. Sim
Enterprises Inc., No. 11 Civ. 2855, 2014 WL 1998237, at *10
(S.D.N.Y. May 24, 2014)).

     The allegations in the plaintiffs' complaints clearly satisfy
this standard as to all the defendants.  In both cases, the
plaintiffs allege that:

> (1)  The defendants, rather than the property owners, hired
>      and fired the plaintiffs. (Hoffman Compl., ¶ 18; McLean
>      Compl., ¶ 21).

(2)   The defendants maintained the time records and payroll of the plaintiffs. (<u>Hoffman</u> Compl., ¶ 20; <u>McLean</u> Compl., ¶ 23).

(3)   The defendants directly supervised the plaintiffs. (<u>Hoffman</u> Compl., ¶ 19; <u>McLean</u> Compl., ¶ 22).

(4)   The defendants determined the pay rates of the plaintiffs. (<u>Hoffman</u> Compl., ¶ 21; <u>McLean</u> Compl., ¶ 24).

(5)   The defendants "suffered or permitted" the plaintiffs to work for the defendants. (<u>Hoffman</u> Compl., ¶ 27; <u>McLean</u> Compl., ¶ 30).

These allegations, taken as true, adequately portray an employment relationship.[4]

2.   <u>Enterprise Coverage</u>

In order to be covered by the FLSA, an enterprise must have an annual gross volume of sales not less than $500,000.  29 U.S.C. § 203 (s)(1)(A)(ii).  The statute defines "enterprise" as

the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an

---

[4]   The defendants' vigorous arguments that they have evidence and declarations showing that they are not the plaintiffs' employers are wasted.  On a motion to dismiss, all facts stated in the plaintiffs' complaint are to be taken as true. Introducing new facts contrary to the plaintiffs' complaint are thus futile.

establishment operated through leasing arrangements
. . . ."

29 U.S.C. 203(r)(1).  Courts consider the annual gross volume of
sales by the enterprise as a whole, not whether an individual
manager has an income of $500,000.  See Shu Lan Chen v. Gypsophila
Nail & Spa Inc., No. 15 Civ. 2520, 2015 WL 3473510, at *1-2
(S.D.N.Y. June 2, 2015); Jia Hu Qian v. Siew Foong Hui, No. 11
Civ. 5584, 2012 WL 1948820, at *2-3 (S.D.N.Y. May 30, 2012).
Therefore, although Ms. Hall alleges that her annual income is
less, this does not warrant dismissing her from the action.

### 3.   Statute of Limitations

Under the FLSA, "[a]ny action commenced . . . for unpaid
minimum wages, unpaid overtime compensation, or liquidated damages
. . . may be commenced within two years after the cause of action
accrued . . . except that a cause of action arising out of a
willful violation may be commenced within three years after the
cause of action accrued."  29 U.S.C. § 255(a).  At the pleading
stage, allegations of willfulness are sufficient for a three-year
statute of limitations to apply.  Guaman v. J & C Top Fashion,
Inc., No. 14 Civ. 8143, 2016 WL 791230, at *4 (S.D.N.Y. Feb. 22,
2016).  The statute of limitations for NYLL claims is six years.
NYLL § 663(3).

Here, the complaints allege willful violations of the FLSA
(Hoffman Compl., ¶¶ 47, 127; McLean Compl., ¶¶ 50, 118, 124), and

24

every plaintiff worked for the defendants within the three years prior to the filing of the relevant complaint (Hoffman Compl., ¶¶ 12-15; McLean Compl., ¶¶ 16-18).   Therefore, none of the plaintiffs is barred by the statute of limitations, though at a later stage their damages may be found to be limited.

### 4.   Willie Horne's Severance Agreement

The defendants argue that since Willie Horne signed a release, his claims must be dismissed.   However, this issue is premature and may not be properly resolved on a motion to dismiss.   Calcutti v. SBU, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003).   "On a motion to dismiss pursuant to Rule 12(b)(6), the Court limits consideration to: (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, i.e., documents that are 'integral' to the complaint."   Id. (internal citations omitted). The alleged release falls under none of these categories.

### 5.   Ihsan's Satisfaction of the NYLL

The defendants argue that Ihsan, L.P., owner of one of the properties managed by Precise, provided the McLean plaintiffs with wage notices, gave them wage statements, and paid them for overtime hours.   (McLean Def. Memo. at 20).   However, the plaintiffs have pled that the defendants are the plaintiffs' employers and that

they have violated the NYLL.   (<u>McLean</u> Compl., ¶¶ 12-18, 51-52).
This argument, too, is therefore premature.

<u>Conclusion</u>

For the reasons discussed above, I recommend that the
defendants' motions (Docket no. 27 in <u>Hoffman</u>; Docket nos. 21, 36,
and 42 in <u>McLean</u>) be denied.  Specifically, I recommend finding
that Cheryl Ighodaro and Angela Hall were not properly served in
connection with the <u>Hoffman</u> action but that the plaintiffs should
be granted an extension of thirty days from the final determination
of these motions to effect service.  Further, I recommend denying
the defendants' motions in all other respects.  Pursuant to 28
U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal
Rules of Civil Procedure, the parties shall have fourteen (14)
days from this date to file written objections to this Report and
Recommendation.  Such objections shall be filed with the Clerk of
the Court, with extra copies delivered to the chambers of the
Honorable Lewis A. Kaplan, Room 2240, 500 Pearl Street, New York,
New York 10007, and to the chambers of the undersigned, Room 1960,
500 Pearl Street, New York, New York 10007.  Failure to file timely
objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:     New York, New York
           September 28, 2016


Copies transmitted via ECF this date to:

Christopher Marlborough
The Marlborough Law Firm, P.C.
555 Fifth Avenue 14th Floor
New York, NY 10017

Jonathan Eric Schulman
Slater Slater Schulman LLP
445 Broad Hollow Road
Melville, NY 11747

Anthony R. Portesy
Slater Slater Schulman LLP
445 Broad Hollow Road
Melville, NY 11747

Seidia Roach Bernard
Roach Bernard, PLLC
300 Merrick Road, Suite 209
Lynbrook, NY 11563